No. 21,654.

JOHN H. FORESMAN, *Appellant*, V. SUSAN C. FORESMAN et al., *Appellees*, LILLIAN M. MAUNEY, and HENRY. W. MAUNEY, *Appellants*. .

SYLLABUS BY THE COURT.

1. PARTITION—*Quieting Title—No Jury Trial as of Right.* Where in a proceeding begun by the filing of a petition stating a cause of action only for partition, and asking no other relief, a defendant files a cross petition setting up a claim of exclusive ownership and possession of one of the tracts involved, and asking to have his title quieted, it is not error to refuse an application of the plaintiff for a jury trial of the issue arising upon such ·cross petition and a reply denying its truth.

2. DEED—*Delivery—Evidence.* Where a deed is handed by the grantor to the grantee with the intention that title shall thereby pass, such passing of title is not prevented by the fact that the deed is immediately returned to the grantor to remain in his possession until his death, in order that he may be assured that it shall not be recorded in his lifetime. The evidence is held to sustain a finding of that state of facts.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed November 9, 1918. Affirmed.

*Edwin Anderson,* of Council Grove, *R. M. Lee, W. E. Atchison,* both of Topeka, and *Frans E. Lindquist,* of Kansas City, Mo., for the appellants.

*M. B. Nicholson,* and *W. J. Pirtle,* both of'Council Grove, for the appellees.

The opinion of the court was delivered by

MASON, J.: On November 11, 1911, J. O. Foresman, the owner of a tract of land, and his wife, Susan C. Foresman, signed and acknowledged a deed purporting to convey it to their son, Ernest M. Foresman. On April 22, 1916, J. O. Foresman died, survived by his wife, one daughter and two sons, leaving a will giving all his property to his wife for her life, with a remainder to their children living at the time· of her death. The will contained a description of three tracts of land (not including that already referred to) under the cap-

Foresman v. Foresman.

tion "My Land Described," with a provision that "the land" should be given to his two sons on condition of their paying the daughter one-third of its appraised value. On February 1, 1917, John H. Foresman, the other son, brought an action for the partition of the real estate described in the deed already referred to, making his mother, his sister and his brother defendants. His brother filed an answer and cross petition in which he claimed to be the absolute owner and to be in the possession of the tract described in the deed and asked to have his title quieted against all the other parties. The plaintiff and his sister filed pleadings denying that the deed was ever delivered to their brother and asking that the land therein described be partitioned with the rest. A trial resulted in a judgment in favor of Ernest M. Foresman, and his brother and sister appeal.

1. In the brief of the appellants it is said that the sole and only question at issue in this appeal is whether or not the said warranty deed from J. O. Foresman and Susan C. Foresman, to Ernest M. Foresman, was delivered by J. O. Foresman to Ernest M. Foresman during the lifetime of J. O. Foresman. Error is assigned, however, upon the refusal of the court to grant the appellants a jury trial upon that issue, and while the question is not further argued in the brief, the statute (Gen. Stat. 1915, § 7179), and *Gordon v. Munn,* 83 Kan. 242, 111 Pac. 177, are cited in support of the assignment. The action was brought as one for partition, and nothing more. As Ernest M. Foresman was in possession of the tract in controversy under a claim of exclusive ownership, an action of partition could not be maintained against him without joining a demand for ejectment. (*Denton v. Fyfe,* 65 Kan. 1, 68 Pac. 1074.) If the plaintiff had prayed for possession, under suitable allegations, the defendant who opposed his claim could as a matter of course have demanded a jury. But the trial of the issue as to the delivery of the deed was had upon the cross petition of Ernest M. Foresman and the denials of the adverse parties, and his pleading was a plain statement of a cause of action for affirmative relief—the quieting of his title, a matter of equitable cognizance, triable without a jury. (*Larkin v. Wilson,* 28 Kan. 513; Note, Ann. Cas. 1913D, 168.) If the plaintiff had seen fit to bring an action of ejectment against the claimant under the deed he could have had a jury trial.

Having chosen to sue only for partition he is not in a position to complain of being denied a jury. The cross petitioner is not in the attitude of one who is invoking an equitable remedy for the possible purpose of avoiding the submission of his claim to a jury. He availed himself of the ordinary procedure open to a person in possession of realty whose ownership is questioned—an action to quiet title.

2. Upon the merits of the case the question is merely whether there was any substantial evidence to support a finding that the deed was delivered. The grantee was of course incompetent to testify as to what took place between his father and himself; but a neighbor testified that in the early part of 1916 his father told her that during a recent illness he had given Ernest the deed, adding, "You know a deed is not good until it is delivered, and I gave Ernest his deed that night." The widow testified that her husband told her he had given Ernest his deed, and that "he would like to have Ernest have it recorded if it were not for the fact that Homer [the plaintiff] would act like he did." Of a subsequent conversation with her husband she said: "He told me that he had given Ernest his deed, and he didn't want him to have it recorded now, and he wanted me to take it and take care of it and if he should go [die] to deliver it to Ernest and let him have it recorded." She added that the next day he took the deed from his coat pocket and handed it to her, saying: "You put this with your papers now and take care of it, and if I should go first, deliver it to Ernest and let him have it recorded." She took the deed and kept it until after her husband's death, when she handed it to Ernest, who had it recorded.

We regard this evidence, with the inferences permissible therefrom, as capable of such interpretation as to sustain a finding, which the court must be regarded as having made, that J. O. Foresman delivered the deed to his son with the intention that the title should thereby pass; that he then had the document returned to him and retained it in his possession in order to be assured that it should not be recorded during his lifetime, because he wished to avoid the comment that might result from knowledge of its execution becoming public. The return of a deed to the grantor immediately after its delivery, for a purpose not inconsistent with an intent that the title shall

pass, does not prevent the vesting of ownership in the grantee. (8 R. C. L. 987.) And the return of a deed to the grantor under an agreement that he should retain it until his death, when it should be recorded, has been held—properly, as we think—to show a purpose to insure its being withheld from record, and not to impair the effect of the prior delivery. (*Blackford v. Olmstead,* 140 Mich. 583.)

It is argued against this view that the expression of the grantor—"If I should go first, deliver it to Ernest and let him have it recorded"—indicates that he did not intend that it should take effect as a deed unless he should die before the grantee. It seems quite as reasonable to suppose, however, that he meant merely to provide for its record in case his son (or wife) survived him, intending otherwise to see to the recording himself. His statement that a deed was not good until it was delivered tended to show that he understood the law and meant for the title to pass at once.

A witness stated that the grantee had said that the deed was not delivered to him until after his father's death, but he denied this. He told on the stand of his having "received" the deed from his mother at that time. If he had spoken of the transaction by which the document finally came into his physical possession as a delivery, it could not have been conclusive evidence, if any evidence at all, that the title had not already vested in him—his ownership could not be lost by his failure to use words in their exact technical sense. In handing him the document after her husband's death his mother in a sense "delivered" it to him, but the fact is without significance if what the law recognizes as such a delivery as to pass title had already been made.

In behalf of the plaintiff and his sister, evidence was introduced tending to show that no delivery of the deed had taken place—that at the time the grantee claims to have first received it his father in reality merely showed it to him and said he didn't want him to have it until after his death. The credibility and weight of this evidence were of course matters upon which the decision of the trial court is final.

The judgment is affirmed.

OPINION DENYING A REHEARING.

The opinion of the court was delivered by

MASON, J.: In a petition for a rehearing it is suggested that the court has not sufficiently indicated the grounds upon which earlier decisions of the court cited in the appellant's brief are not regarded as controlling. Upon the question of the right to a jury trial the petitioner quotes the syllabus in *Gordon v. Munn,* 83 Kan. 242, 111 Pac. 177. The language there used, as in judicial opinions generally, must be interpreted in the light of the particular facts to which it was applied. A claimant out of possession, who has open to him the remedy of ejectment, cannot escape a jury trial of the question of fact on which his claim depends by presenting that issue in some form of equitable action. But a claimant in possession, to whom ejectment is not available, may maintain an action to quiet title (*Butts v. Butts,* 84 Kan. 475, 478, 114 Pac. 1048), and his opponent is not guaranteed a jury merely because the controversy involves the ownership and in a sense, and remotely, the right of possession (inasmuch as such right depends upon ownership), that being true of most actions of that character.

The petitioner regards the facts in *Alward v. Lobingier,* 87 Kan. 106, 123 Pac. 867, so similar to those of the present case as to require the grounds of distinction to be stated. The cases are alike in that in each the deed, the delivery of which was in question, was handed by the grantor to the grantee, and by the grantee returned to the grantor, who retained it until death. But to the court the attendant circumstances appear to make an obvious difference in the legal effect of this action. There the findings show that the grantor handed the deed to the grantee, asking her to read it, and in the same conversation saying that she (the grantor) desired to retain the deed in her own possession so that she might continue to reside in the property until her death. The expressed purpose of the manual delivery to the grantee was merely that she might read it, which (in the judgment of this court) excluded the inference of an intention to make the kind of delivery that would pass title; and the expressed purpose of retaining possession by the grantor was that she might hold the property during her lifetime, which (in the judgment of this court) was inconsistent with an intention that the deed should take effect immediately

because it purported to convey to the grantee at once all rights to the property, without reservation. Here there was evidence to the effect that the grantor said, speaking of the manual delivery of the deed to his son: "You know a deed is not good until it is delivered, and I gave Ernest his deed that night." This appears to the court to be some evidence that the delivery referred to was made with a present purpose that the title should pass. There was also evidence that the purpose of the grantor in having the deed again placed in his hands was that he might be assured that its existence should not be made public by its being recorded, whereby family dissensions might arise —a purpose which the court regards as entirely consistent with an intention that the title should vest in the grantee at the time of the original delivery.

The petition for a rehearing is denied.